UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Justin Slaby,<br>       Plaintiff,<br>  6 Joyce St., Stafford, VA 22556<br><br>v.<br><br>Eric Holder, in his official capacity<br>as Attorney General of the United States<br>of America,<br><br>       Serve:  Ronald C. Machen, Jr.<br>       Office of the United States Attorney<br>       Attention: Civil Process Clerk<br>       555 4th Street, NW<br>       Washington, DC 20530<br><br>       Eric Holder<br>       United States Attorney General<br>       c/o Department of Justice<br>       950 Pennsylvania Avenue, N.W.<br>       Room B-103<br>       Washington, D.C. 20530-0001<br><br>       Defendant. | Civil Action No. _____<br><br><br><br><br><br>**COMPLAINT**<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>A JURY IS DEMANDED |

**Plaintiff's Original Complaint**

      The plaintiff, Justin Slaby has, since he was 18 years of age, wanted to serve his country. So he did, serving in Afghanistan and Iraq until a defective grenade exploded and destroyed most of his left hand.  Following his service as an American soldier, he wanted to further his service to the United States by applying to become an FBI Special Agent, having overcome the injury to his left hand.  Because of his unique skills and abilities, the FBI offered him a job as a Special Agent contingent on his passing a physical and background examination.  He passed both examinations and was hired as a Special Agent.  The medical team the FBI employed to

certify his fitness for duty cleared him and certified that he was qualified to perform the essential functions of the Special Agent position.   Yet soon after his hiring, FBI personnel could not look beyond his war injury and consider his *actual* abilities.

Instead of  welcoming a veteran whose injury occurred because a grenade detonated prematurely, the FBI instructors at the academy in Quantico responded to his presence with incredible hostility and abject disrespect.  One scoffed at him,  commenting to his classmates "What's next, guys in wheelchairs?" This loaded comment is a window into the attitudes of the instructors who showed at every turn that they *wanted* him to fail because of his appearance and prosthesis.  Instead of marveling at his physical prowess and dexterity, they derided it.  The FBI required him to undergo assessments that other students were not required to undergo and removed him from training even though he was fully qualified to perform all the essential functions of the job.  The FBI then discharged him as a Special Agent because he did not have two normal hands, even though his war injury did not interfere with his ability to perform the job.  A returning veteran deserves far more, as does the public whom the FBI serves and protects.

## JURISDICTION AND VENUE

1. This case is brought pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, *et seq*. ("Rehabilitation Act").  This Court has jurisdiction of this case according to 28 U.S.C. § 1331.

2. The Department of Justice has its headquarters in Washington, D.C.  Venue is invoked pursuant to 28 U.S.C. § 1391.

## PARTIES

3. The plaintiff, Justin Slaby, is an adult resident of Stafford, Virginia.

4. The defendant, Eric Holder, is the Attorney General of the United States of America and is sued in his capacity as head of a department in the executive branch of the Federal Government within the meaning of 29 U.S.C. §§ 791 and 794.

## STATEMENT OF FACTS

5. Justin Slaby is a veteran who served both in Afghanistan and Iraq. He served all three of his deployments with Bravo Company, 3/75 Ranger Regiment. In the summer of 2004, tragedy struck when a defective flash bang (a stun grenade variant) prematurely detonated in his left hand. As a result, what remained of his left hand had to be amputated.

6. Slaby left the Army in May 2005. Knowing that he wanted to continue serving his country and had always dreamed of becoming an FBI agent, he consulted with an FBI applicant coordinator. He was advised that he needed to get a college degree, a body of work experience outside the military, and have good physical fitness scores to be considered a competitive applicant. Slaby directly asked the man if his hand was going to be an issue. The response? If you can pass the fitness for duty exam and the background check, your injury won't be a problem.

7. Slaby then went to work to make sure he was up to the task. He worked full-time and went to college at night. He also trained diligently to be physically fit and capable of performing the job. He was labeled an "advanced user" by his prosthetist.

9. In June 2009, after obtaining his college degree, Slaby applied for a Special Agent position with the Federal Bureau of Investigation ("FBI"). After a lengthy and arduous application process, which included written tests and oral interviews, the FBI offered him the job of Special Agent. The offer was contingent on passing his fitness for duty examination and a thorough background investigation. He passed both. Utilizing his state of the art prosthesis, he

was able to prove that he could perform every one of the essential job tasks to a licensed Physical Therapist and two FBI Special Agents. Accordingly, the FBI notified him that he had passed his background check and his fitness for duty examination and that he was to report for duty on January 30, 2011 for basic training. He was ecstatic and ready to serve, especially in light of his successful battle to overcome the loss of his hand.

10. His initial optimism turned to crushing disappointment once he actually arrived in Quantico. He was treated by the training staff as an outsider, with FBI staff openly questioning how the FBI had hired such a man. He quickly realized that these instructors were actively working *against* him, rather than with him. For example, they would criticize him for the *manner* in which he was successful. They were antagonistic because of his proficiency with the use of both his hand and his prosthesis.

11. On his third day at Quantico, the FBI told Slaby that he alone would be required to engage in an extensive set of "Assessments". These were not assessments of his ability to perform the essential functions of the job, which the FBI had certified that he was able to do. Rather than permit him to be trained like other Special Agents, the FBI required him to spend many extra hours at lunchtime or after the regular day to go through various assessments that were not essential functions of the job. The FBI also called him into countless meetings randomly throughout each day. He became known by his classmates as the guy that was "never there."

12. The FBI accused Slaby of being unable to fire with his left hand unsupported but this is not an essential function of the job. It is not even a marginal function. Moreover, no other Special Agent in the training was required to show proficiency in this task. All they have to do is shoot five rounds with their non-dominant hand, but they do not have to hit anything. Even after Slaby developed a technique to shoot five rounds with his non-dominant hand, the instructor still

complained.

13. Shortly thereafter, the FBI told him that it did not approve of the manner in which he could shoot with his left hand, and ordered him to shoot only with his right hand. He was very proficient at that task, but immediately after the class was over, the FBI informed that he was being dropped as a Special Agent because of his disability, a damaged left hand that does not interfere in his ability to perform the essential functions of the job.

14. To the extent that the FBI complained about his ability to perform essential functions, it had a duty to make accommodations that would allow safe performance, but this was denied to him. For example, if shooting unsupported with the non-dominant hand was really essential, then Slaby's method of performing it was itself a reasonable accommodation, but the FBI refused to accept it. Rather than allowing him to succeed, the FBI looked for reasons to reject him. One instructor even told him that his ability to demonstrate things "on a list" was not important to him. He claimed he was afraid of the "what ifs" regarding a man such as Slaby, as if he was damaged goods. The fact is that he was not damaged goods, but highly proficient at the very essential functions of the job the FBI needs so much. That he was equated with "guys in wheelchairs" illuminates the poisonous process that doomed this Agent.

16. Slaby has asked the FBI to reconsider its rejection of him as a special agent. Instead of agreeing to do so, the FBI has failed and refused to even investigate the formal complaint he filed in December of last year. Again, no veteran should be treated in this fashion.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

17. Slaby exhausted his administrative remedies by completing the internal counseling process and then filing a formal written complaint on December 15, 2011.

18. Neither Slaby nor his counsel ever received a final decision on his complaint, and more

than 180 days have passed since the complaint was filed.

## COUNT I

(Rehabilitation Act)

Disability Discrimination

19. The plaintiff is a qualified individual with an actual disability, a missing hand. The plaintiff is able to perform the job of Special Agent, but has been denied the right to do so because of the FBI's fears and antiquated views about his condition. He has also been regarded as having a disability, and has been denied a job as an FBI agent because of a record of a disability.

The actions of the defendant as set forth above constitute a violation of the Rehabilitation Act, 29 U.S.C. §§ 791, *et seq*.

**Relief Requested**

Justin Slaby, the plaintiff, respectfully requests that the Court:

A. Order the FBI to make the plaintiff whole, including, but not limited to reinstating him as a special agent, allowing him to complete the training class and paying him appropriate back pay, front pay and benefits with prejudgment interest in amounts to be proven, compensatory damages, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

B. Order the FBI to pay the plaintiff his costs, expert witness fees and reasonable attorney's fees incurred in pursuing the matter herein;

C. Award plaintiff such other relief, legal or equitable, as may be warranted.

Plaintiff demands a trial by jury on all of his claims.

                                                           Respectfully submitted,

                                                           Justin Slaby,
                                                           By his attorneys,

/s/David R. Cashdan
D.C. Bar No.  051342
Cashdan & Kane, PLLC
1150 Connecticut Avenue N.W.
Washington, D.C.  20036-4129
(202) 862-4353 (telephone)
(202) 862-4331 (fax)

John Griffin, Jr.
Texas Bar No. 08460300
203 North Liberty Street
Victoria, Texas 77901
(361) 573-5500 – Telephone
(361) 573-5040 – Telecopier

Katherine L. Butler
Texas Bar No. 03526300
1007 Heights Boulevard
Houston, Texas 77008
(713) 526-5677
Fax (713) 526-5691

Counsel For Plaintiff