## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## (ALEXANDRIA DIVISION)

| | | |
|---|---|---|
| **JUSTIN SLABY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:12-cv-01235** |
| | ) | **(AJT/IDD)** |
| **ERIC HIMPTON HOLDER, JR.** | ) | |
| **In his official capacity as Attorney General,** | ) | |
| **Defendant.** | ) | |
| | ) | |

### PLAINTIFF'S MOTION FOR REASONABLE FEES AND COSTS

Plaintiff, Justin Slaby, moves the Court for an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 794a(b), FED. R. CIV. P. 54(d)(2)(A), the Court's final judgment (Dkt. 334), and its orders regarding the filing of this motion (Dkts. 329, 336 & 338).

The Rehabilitation Act provides that "[i]n any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 29 U.S.C. § 794a(b).[1] Slaby prevailed in the jury verdict of August 7,

---

[1] "Section 794a fee awards are governed by the same considerations controlling in [42 U.S.C.] § 1988 actions." *Jones v. Ill. Dep't of Rehabilitation Services*, 689 F.2d 724, 730 n.8 (7th Cir. 1982). *See also Hensley v. Eckerhart*,

2013, with a compensatory award of $75,000 (Dkt. 288), and the Court

subsequently added equitable relief in the form of reinstatement to new agent

training (with judicial supervision of any effort to remove Slaby from training),

and back pay of $72,580 plus front pay available to Slaby once he graduates from

training (Dkt. 329).

> [A] plaintiff 'prevails' when actual relief on the merits of his claim
> materially alters the legal relationship between the parties by
> modifying the defendant's behavior in a way that directly benefits the
> plaintiff
> ....
> ... A judgment for damages in any amount, whether
> compensatory or nominal, modifies the defendant's behavior for the
> plaintiff's benefit by forcing the defendant to pay an amount of
> money he otherwise would not pay.

*Farrar v. Hobby*, 506 U.S. 103, 111-13 (1992). Though the language of the

Rehabilitation Act (and similarly-worded statutes) gives the Court discretion to

award fees and other costs to Slaby, a prevailing party is *entitled* to the award

unless special circumstances would render it unjust, *Christianburg Garment Co. v.*

*Equal Employment Opportunity Comm'n* , 434 U.S. 412, 416-417 (1978), and

---

461 U.S. 424, 433 n.7 (1983) ("[t]he standards set forth in this opinion [a § 1988 case] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"), *cited with approval in Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 n.4 (2001); *Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("our case law construing what is a 'reasonable' fee applies uniformly to all" federal fee-shifting statutes). Consequently, this memorandum cites case law under § 794a(b) and, where appropriate, case law under other fee-shifting statutes.

none are present here.

## I.     Calculating the Lodestar

"[T]here is a 'strong presumption' that the lodestar figure"—the product of multiplying hours reasonably expended by a reasonable hourly rate—represents the "reasonable" fee to which Slaby is entitled. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010); *see also McAfee v. Boczar*, __ F.3d ___, 2013 WL 6501329, at *5 (4th Cir. Dec. 12, 2013). The *Johnson* factors,[2] in combination with Slaby's lawyers' time records and their evidence of local-market rates, inform the Court's calculation of the lodestar: "To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the [*Johnson*] factors." *McAfee*, 2013 WL 6501329, at *4.

---

[2] (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*McAfee*, 2013 WL 6501329, at *4 n.5

The Court's determination of the lodestar components—the reasonable hours and reasonable rates—are fact-findings, and these fact-findings, when combined with the Court's decisions after calculating the lodestar (*see infra* Section II), will yield a fee award that is subject to review only under the most deferential standards. *Hensley*, 461 U.S. at 437 ("We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."); *McAfee*, 2013 WL 6510329, at *4 ("we review for abuse of discretion a district court's award of attorney's fees, but, we will only reverse such an award if the district court is 'clearly wrong' or has committed an 'error of law'").[3]

### A.   The Hours Claimed are Reasonable

#### 1.   The Lawyers' Contemporaneous Time Entries

Setting the reasonable-hours component of the lodestar begins with "reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity, sufficient to permit the court to weigh the hours claimed

---

[3] *See also Plyler v. Evatt*, 902 F.2d 273, 277-78 (4th Cir. 1990) ("[o]ur review of the district court's award is sharply circumscribed; we have recognized that because a district court has close and intimate knowledge of the efforts expended and the value of the services rendered, the fee award must not be overturned unless it is clearly wrong").

and exclude hours that were not 'reasonably expended." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) (citations and internal quotation marks omitted).[4]

Slaby's lawyers carry this initial burden with declarations from John W. Griffin, Katherine L. Butler, John R. Ates, and David R. Cashdan that validate their firms'[5] invoices as contemporaneous descriptions, in detail, of work

---

[4] *See also E.E.O.C. v. Nutri/Sys., Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988):

> Proper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks. Fee claimants must submit documentation that reflects reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity. The information supplied must be sufficient to permit the trial judge to "weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities," so that "hours that were not 'reasonably expended' " can be excluded. Absent such documentation, a claimant's submission is no better than a post hoc estimate. Inadequate documentation is a basis for reducing or denying a fee award.

(Citations omitted.)

[5] John W. Griffin for Marek, Griffin & Knaupp ("MGK")
Katherine L. Butler for Butler & Harris ("B&H")
John R. Ates for Ates Law Firm ("ALF") (local counsel in E.D. Va.)
David R. Cashdan for Cashdan & Kane ("C&K") (local counsel in D.D.C.)

reasonably necessary for the proper prosecution of this matter.[6] (Exh. 1 (Griffin

Dec.) at ¶ 14; *see also* Exh. 2 (Butler Dec.) at ¶ 14; Exh. 3 (Ates Dec.) at ¶ 9; Exh.

4 (Cashdan Dec.) at ¶ 10.)

    For submitting this motion, the firms' contemporaneous time records were

checked closely against other "'contemporaneous records, briefs or memoranda to

ensure against recording errors,'" and otherwise edited for clarity and

completeness so as "to allow 'this Court to make an informed decision about the

relevance and appropriateness of the entry.'" *Cobell v. Norton*, 407 F. Supp. 2d

140, 155 (D.D.C. 2005). (Exh. 1 (Griffin Dec.) at ¶ 9.) Docket numbers were

inserted into time entries to facilitate the identification of tasks with objective

products. Also, the four firms' time records were combined into a single

chronological document (Exh. 5A), to facilitate review of how Slaby's lawyers

coordinated their efforts to avoid duplication. The time entries are presented,

---

[6] Reasonable hours include time spent in the pre-judicial administrative phase, *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 61 (1980) ("The words of § 706(k) [i.e., 42 U.S.C. § 2000e-5(k), which is incorporated into the Rehabilitation Act at 29 U.S.C. § 794a(a)(1)] leave little doubt that fee awards are authorized for legal work done in 'proceedings' other than court actions. Congress' use of the broadly inclusive disjunctive phrase 'action or proceeding' indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings."), in settlement efforts, *Alford v. Martin & Gass, Inc.*, 2009 WL 2447936, at *3 n.7 (E.D. Va. Aug. 3, 2009) (Brinkema, D.J.); and in preparing and defending this motion for fees and costs. *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986).

alternatively, by stage of the litigation (and chronologically within each stage).

(Exh. 5B.)  *See, e.g.*, *Heard v. Dist. of Columbia*, 2006 WL 2568013, at \*20

(D.D.C. Sept. 5, 2006) ("the step perhaps most helpful to a court ... [is] grouping

and summarizing the time entries ... by the nature of the activity or the stage of the

case").

### 2.    The Lawyers' Adjustments Based on Billing Judgment

Slaby's lawyers also have the burden of showing that they have exercised

billing judgment to exclude any hours that, even though contemporaneously

recorded, they would not charge to Slaby if Slaby were paying their bill:

> Counsel for the prevailing party should make a good faith effort to
> exclude from a fee request hours that are excessive, redundant, or
> otherwise  unnecessary, just as a lawyer in private practice ethically is
> obligated to exclude such hours from his fee submission. "In the
> private sector, 'billing judgment' is an important component in fee
> setting. It is no less important here. Hours that are not properly billed
> to one's *client* also are not properly billed to one's *adversary* pursuant
> to statutory authority."

*Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939-40 (citation omitted).

The lawyers' billing-judgment reductions are, for the most part, evident on

the face of the consolidated invoices (Exhs. 5A & 5B): reductions are printed in

red ink and are text-searchable by searching the consolidated invoices for "0.00"

or "reduced." Generally, the reductions fall into these categories:

- *Inter- & Intra-Office Lawyer Conferences.* To avoid concerns about

whether conferences between Slaby's lawyers were reasonably necessary, routine conferences on relatively minor aspects of the litigation are generally charged by only one participating attorney, rather than by all. In addition, there are many instances when Ms. Butler recorded and charged for a conference with Mr. Griffin, but Mr. Griffin did not record the conference at all and, hence, it no reduction is required.[7]

This was, however, a case with intensive discovery: Slaby's lawyers took 24 depositions[8] and received and reviewed thousands of pages of FBI documents.[9] To

---

[7] *E.g., cf.* Ms. Butler's conference entry on 1/9/12 with the absence of any entry by Mr. Griffin on that date. There are numerous days when Ms. Butler and/or Mr. Ates billed time for a conference with Mr. Griffin, but he recorded no time at all. *See, e.g.*, 3/19/12, 6/5/12, 9/11/12, 9/21/12, 9/26/12, 10/3/12, 10/17/12, 11/4/12, etc.

[8] The plaintiffs took depositions of these witnesses (either in their personal capacity or as FRCP 30(b)(6) designees of the defendant):

| | |
|---|---|
| 3/20/13 | R. Flannagan, T. Delaney |
| 3/25/13 | Dr. Yoder, J. Wilson |
| 3/26/13 | E. Robert, G. Trent |
| 3/27/13 | Dr. Wade, N. Williams |
| 4/26/13 | D. Moyet-Treretola |
| 5/6/13 | M. Casey, G. Trent (not taken due to absent witnesses and counsel) |
| 5/7/13 | M. Casey, |
| 5/9/13 | Dr. Wade, A. Grubb, G. Trent |
| 5/16/13 | M. Crider |
| 5/17/13 | C. Pierce |
| 5/22/13 | T. Delaney, Dr. Yoder |
| 6/13/13 | C. Davis, S. Ryan |
| 6/20/13 | K. Kolbye |

accomplish these tasks in the relatively short time that the Court's scheduling order (as amended) allowed, Slaby's lawyers had to divide them up and, therefore, they had to confer.[10] Further, the defendant's deficient discovery responses forced Slaby's lawyers to file six motions to compel that, the Court found, were meritorious in many respects, and Teresa Carlson's conduct toward Mark Crider triggered numerous filings concerning both the appropriate remedy and her conduct's admissibility at trial.[11] Again, the Court's schedule required that these tasks be completed quickly, so they had to be divided, and the division required conferral. Consequently, Slaby's lawyers do not believe that billing judgment requires the reduction of all inter- and intra-office conferences.

---

6/25/13       Dr. Wade, J. Cochran, C. Davis
6/26/13       S. Smith

In addition, the defendant deposed Slaby, J. Peters, and A. McCarthy.

[9] In Exhibit 5B—the consolidated time entries sorted by phase of the litigation—time entries reflecting discovery are in Phase 4.

[10] For example, *Daly v. Hill*, 790 F.2d 1071, 1079 (4th Cir. 1986), acknowledges that conferences with clients can be time reasonably spent: "Conferences with clients are an important part of any litigation and attorney time reasonably spent with clients in preparing a case should be part of the hours compensated in any attorney's fee award." The same is true about conferences between the client's lawyers.

[11] Time entries reflecting disputes over discovery are in Phase 4, and time entries reflecting the Carlson matter are in Phase 7-1 and, closer to the time of trial, in Phase 7. (Exh. 5B.)

● *Travel.* This litigation required Mr. Griffin and Ms. Butler to travel many times to the Court or nearby locations for various proceedings, not just trial. Often, they were able to combine some parts of their travel with work on this case, and they fully charged for such time. When they traveled without working on this case, they either billed the non-work segments of their travel time at half of the actual time, or they did not record such time at all. (All travel dates are indicated as such in the time entries.)

● *Quarter-hour billing.* It is the usual practice of Mr. Griffin's firm to bill its fee-paying clients by the quarter-hour, and his firm's timekeepers have adhered to that practice in this case. (Exh. 1 (Griffin Dec.) at ¶ 13.) Mr. Griffin has testified, however, that his practice—and his instruction to his firm's timekeepers —is always to round down to the nearest quarter-hour. (*Id.*) For example, a task that took 20 minutes would be billed not at 0.50, or even at 0.40 (under tenth-hour billing), but at 0.25 (and likewise if the task took, for example, 6:20: it would be billed at 6.25). Further, Mr. Griffin often exercises billing judgment contemporaneously with the service by not recording time for inter- or intra-office conferences.

● Mr. Ates's billing-judgment reductions are not evident on the face of his time entries, but he has testified that he exercises billing judgment by

contemporaneously recording reduced time, rather than by later reducing the contemporaneously recorded time. (Exh. 3 (Ates Dec.) at ¶ 9.) He "reasonably estimate[s] that approximately 10% of the aggregate amount of time spent on the matter was not billed due to such contemporaneous and professional courtesy billing discretion." (*Id.*)

### 3.   The *Johnson* Factors and the Reasonable-Hours Component of the Lodestar

None of the *Johnson* factors provides a basis for any further reduction of the reasonable-hours component of the lodestar. Exhibit 5B—the consolidated time entries sorted by phase of the litigation—shows that Slaby's lawyers spent most of their time in this case taking depositions of the defendant's witnesses (*see supra* note 8) and bringing motions to compel because of the defendant's deficient discovery responses. There is no plausible argument that it was unreasonable to take any of these depositions: all of the witnesses were either listed by the defendant (in Dkt. 76 and/or Dkt. 136) or were designated by it to testify in its FRCP 30(b)(6) deposition, with the exception of Mark Crider and Charles Pierce. And both of these two ended up on Slaby's final witness list and testified at trial. (Dkts. 189 & 286-1.) The Court found that the discovery motions were meritorious in significant respects so that, ultimately, Slaby got the discovery he needed to support his case, so again the time recorded by Slaby's lawyers—in *Johnson*'s

terms, "[t]he time and labor expended" —was reasonable.

More importantly, "'[t]he government cannot litigate tenaciously and then

be heard to complain about the time necessarily spent by the plaintiff in

response.'" *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (quoting

*Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc)). But litigate

tenaciously is what the defendant did, especially—but not only—in discovery, as

Ms. Butler describes in her declaration:

> The response the government asserted to Slaby's first set of discovery
> is telling. In that first set,  he sought information about other special
> agents with a  missing limb, an amputation of any kind, an inability to
> fully use one or more limbs or who use any prosthesis.  Rather than
> simply comply with the discovery requests, and disclose the agents
> who played a prominent role during Mr. Slaby's trial, the FBI first
> claimed that they did not exist, and stated that only Special Agent that
> fit this request was removed like Slaby was. The FBI's Chief Medical
> Officer, David Wade, verified the accuracy of this attempt to suppress
> discovery.  It took many hours of investigation and work product to
> gather information the FBI had, but was concealing. It also required
> numerous motions to compel to require the government to share
> information about a number of agents who were kept on the job even
> though they could not use one of their hands or arms fully.
> Regrettably, even when Slaby, by his counsel's own work product
> obtained the names of some of the agents and gave them to the FBI, it
> still refused to produce records, claiming that other agents who
> couldn't shoot with one hand or the other were not sufficiently
> similarly situated to Slaby.  The records ultimately showed that the
> government does not require its agents to shoot with the off hand.
> The Agency, over a period of months and multiple court hearings,
> stubbornly attempted to shield the identity of agents with hand
> injuries unless the FBI itself considered the injuries "catastrophic"
> and "permanent."  When the FBI, after multiple court hearings,

finally complied, it turned out that the FBI did not consider paralysis, breast cancer and amputations to be catastrophic and permanent. When the responsive documents were finally produced under court order, days before the discovery cut-off, they revealed that one FBI agent had worked for years with a "non-functioning" "paralyzed right arm." (FBI 8631.1.) The FBI also has allowed another agent to continue working as a special agent after he suffered a "severe blast injury to the right hand" (FBI 8936) that left him with a "93% loss of function in his right upper extremity." (FBI 8943.) Pictures in the file show that his injuries were very severe. *See, e.g.*, FBI  8876. And they show another agent who has been unable to use her dominant hand for several years because of "severe nerve damage" (FBI 9681) yet was allowed substantial time to retrain and become a "left handed shooter." (FBI 9824-25.) Yet another agent's file states he is "unable to use rt. hand at all." (FBI 10110.) The Agency fought many battles to shield this probative evidence, and complied only after multiple court orders.

(Exh. 2 (Butler Dec.) at ¶ 21.)

Ms. Butler's declaration continues with further descriptions of the obstacles presented by the defendant's witnesses' untruthfulness, Teresa Carlson's effort to influence Mark Crider's testimony in the defendant's favor,[12] improper redaction of produced documents, and failure to designate witnesses for an FRCP 30(b)(6)

---

[12] The Court has already determined that the conduct was sanctionable and ordered the defendant to pay attorney's fees for certain work in connection with Slaby's motion for sanctions. (Dkt. 238 at 3-4.) But the parties agreed to defer resolving the amount, so nothing was paid and this motion does not seek a double-recovery on the work specified in Dkt. 238.

The Court also sanctioned the defendant for failure to appear at depositions on May 6, 2013. That sanction covered five hours of Mr. Griffin's time, and was resolved by the defendant's payment of $2,250 on August 13, 2013. Accordingly, five hours are subtracted from Mr. Griffin's total time in Exhibit 5B, so that he is not doubly compensated for it.

deposition. (Exh. 2 (Butler Dec.) at ¶¶ 22-23.)

Beyond these discovery obstacles, and on the merits, the defendant continued to insist through summary judgment "that every Special Agent must shoot proficiently with both hands." (*Id.* at ¶ 24.) That proved false: "In an explosive admission, one witness who was designated to testify on the off hand shooting issue [Christopher Davis], actually confirmed that off hand shooting is risky behavior, not an essential function." (*Id.*) The defendant's own witness did not support one of the key contentions of its case.

The time and labor expended were also reasonable from the perspective of "(2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; ... [and]  (7) the time limitations imposed by the client or circumstances." The Court has already noted the novelty of Slaby's case:

> Slaby was the FBI's first Special Agent to be trained with his disability; and based on the testimony presented at trial and in post-trial hearings, it appears to the Court that, on balance, the FBI's past conduct that resulted in unlawful discrimination issued not so much out of any actual intent to discriminate, but rather a lack of experience and expertise in assessing the safety concerns presented by Slaby's disability ....

(Dkt. 329 at 8-9.) The same is true from the plaintiff's perspective: there was no template for this kind of case, no precedent showing how anyone else with a

prosthetic hand had prevailed against the FBI (or any other federal law enforcement agency) with evidence that he or she was qualified and "would not constitute a direct threat to the health or safety of himself or other individuals that cannot be eliminated or reduced by reasonable accommodation." (Dkt. 329 at 2.) Slaby's lawyers had to figure out what evidence it would take to prevail on this novel claim, and where to find it. That took both legal skill and—given the defendant's above-described approach to discovery—dogged advocacy. Also, as previously noted, the Court required Slaby's lawyers to bring this case to trial quickly. The compressed schedule did not allow them to waste time on discovery of dubious relevance: this factor suggests, if anything, that the time entries are *not* likely (especially after the lawyers' billing-judgment reductions) to contain "excessive, redundant, or otherwise  unnecessary" time: there simply was not enough time for that to have been a problem.

## B.   <u>The Hourly Rates are Reasonable in the Forum's Market</u>

The second component of the lodestar is the lawyers' reasonable hourly rates, which is determined by reference to the reasonable hourly rates in the legal market where the case was litigated. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "The evidence we have deemed competent to show prevailing market rates includes 'affidavits of other local lawyers who are familiar with both the skills of

the fee applicants and generally with the type of work in the relevant community."

*McAfee*, 2013 WL 6501329, at *7.

Slaby's lawyers and paralegals, their requested rates, and the evidence

supporting their rates are charted below:

| Lawyer | Year Licensed | Requested Rate[13] | Supporting Evidence |
|--------|---------------|-------------|---------------------|
| John R. Ates<br>Local Counsel | 1993 | $420/hour | Declarations of Bruce A. Fredrickson (Exh. 8), David R. Cashdan (Exh. 4), and Susan R. Podolsky (Exh. 7) |
| David R. Cashdan<br>Local Counsel[14] | 1967 | $520/hour | Declaration of Bruce A. Fredrickson (Exh. 8) |
| Katherine L. Butler | 1981 | $500/hour | Declarations of Victor M. Glasberg (Exh. 9) and Bruce A. Fredrickson (Exh. 8) |
| Margaret A. Harris | 1981 | $500/hour | Declaration of Bruce A. Fredrickson (Exh. 8) |

[13] Current rates are used for all timekeepers even though the first time recorded in this case was in December 2011. That is consistent with *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("[C]ompensation received several years after the services were rendered ... is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed .... We agree, therefor, that an appropriate adjustment for delay in payment—whether by the application of current rates rather than historic hourly rates or otherwise—is within the contemplation of the statute [§ 1988].") and 29 U.S.C. § 794a(a)(1)'s incorporation of 42 U.S.C. § 2000e-16(d)'s allowance of "interest to compensate for delay in payment." Mr. Ates has billed at $420/hour on trial-level work since 2009, and that rate is used throughout this litigation. (Exh. 3 (Ates Dec.) at ¶ 6.)

[14] Mr. Cashdan served as local counsel while the case was pending in U.S. District Court for the District of Columbia.

| John W. Griffin | 1981 | $500/hour | Declarations of Victor M. Glasberg (Exh. 9) and Bruce A. Fredrickson (Exh. 8) |
|---|---|---|---|
| Robert E. McKnight | 1993 | $400/hour | Declarations of John W. Griffin (Exh. 1) and John R. Ates (Exh. 2) |
| Paul R. Harris | 2007 | $295/hour | Declarations of Katherine L. Butler (Exh. 2) and John R. Ates (Exh. 3) |
| Michael N. Neuerburg | 2010 | $250/hour | Declarations of John W. Griffin (Exh. 1) and John R. Ates (Exh. 3) |
| **Paralegals** | | | |
| Michael N. Neuerburg[15] | | $145/hour | Declarations of John W. Griffin and John R. Ates (Exhs. 1 & 3) |
| Janice Barlow | | $145/hour | Declarations of Katherine L. Butler and John R. Ates (Exhs. 2 & 3) |
| Richard Soliz | | $145/hour | Declarations of John W. Griffin and John R. Ates (Exhs. 2 & 3) |

Further evidence of the reasonableness of these rates in the fact that they are all within the ranges found to be reasonable by Craig Reilly, a local defense attorney. Mr. Reilly's matrix has been cited with approval in *Vienna Metro, LLC v.*

---

[15] Mr. Neuerburg, because of his technical skills, performed some functions shortly before and during trial relating to the display of exhibits that did not require a lawyer, and for which MGK seeks compensation at a paralegal rate. On Exhibits 5A and 5B, he appears in this capacity as "MNJ-B."

*Pulte Home Corp.*, #1:10-cv-502 (E.D. Va. 2011) (Doc. #263 (unsealed)), in

*Mitile Ltd. v. Hasbro Inc.*, #1:13-cv-451, 2013 WL 5525685  (E.D. Va. 2013), and

most recently in *Tech Sys., Inc. v. Pyles*, 2013 WL 4033650, at *6 n.4 (E.D. Va.

Aug. 6, 2013).

   To the extent that the Court considers the declarations and the Reilly matrix

in light of the *Johnson* factors, it should also conclude that the requested rates are

reasonable. A key rate-setting factor is "the experience, reputation, and ability of

the attorney." The supporting declarations address these qualities; plus, and the

novelty of Slaby's claim and the success he enjoyed (both at trial and in the

proceedings on equitable relief) corroborate Slaby's legal team's exceptional

abilities.

   Moreover, the engagement agreement with Mr. Ates as local counsel states

that he will be compensated at his normal and customary trial-level rate of

$420/hour (Exh. 3 (Ates Dec.) at ¶ 6), and that factor should be taken into account

in determining the reasonable rate.  *See Bland v. Fairfax County*, Case No. 2011

U.S. Dist. LEXIS 128522, at *28 (E.D. Va. Nov. 7, 2011).

## II.   <u>Adjustments to the Lodestar</u>

   After calculating the lodestar, two steps remain: "the court must 'subtract

fees for hours spent on unsuccessful claims unrelated to successful ones, '"  and

then "the court should award 'some percentage of the remaining amount,

depending on the degree of success enjoyed by the plaintiff.'" *McAfee*, 2013 WL

6510329, at *4.

Slaby had no unsuccessful claims: he brought only one claim:

> 19. The plaintiff is a qualified individual with an actual
> disability, a missing hand. The plaintiff is able to perform the job of
> Special Agent, but has been denied the right to do so because of the
> FBI's fears and antiquated views about his condition. He has also
> been regarded as having a disability, and has been denied a job as an
> FBI agent because of a record of a disability.
>         The actions of the defendant as set forth above constitute a
> violation of the Rehabilitation Act, 29 U.S.C. §§ 791, *et seq.*

(Dkt. 1 at 6.) This motion presents none of the complicated apportionment

problems that courts face when a party has brought multiple claims and succeeded

on only some of them.

The final step is "award[ing] 'some percentage of the remaining amount,

depending on the degree of success enjoyed by the plaintiff.'" As the *McAfee* court

recently explained, the focus on success is due to *Hensley*, where the Supreme

Court "recognized that the extent of a plaintiff's success is 'the most critical

factor' in determining a reasonable attorney's fee." 2013 WL 6501329, at *8.

According to *Hensley*, "[w]here a plaintiff has obtained excellent results, his

attorney should recover a fully compensatory fee...." *Hensley*, 461 U.S. at 435.

Slaby obtained an excellent result: he prevailed on his single claim and was

awarded compensatory damages of $75,000, obtained relief in the form of

reinstatement to the FBI's new agent training program and judicial oversight of

any movement by the FBI to remove him from that program, and will receive back

pay and front pay if he graduates.[16] Slaby never demanded more than that; indeed,

he never demanded any particular amount of compensatory damages. Further,

Slaby never turned down a greater offer from the defendant; in particular, he never

turned down a pre-trial settlement offer that included reinstatment, which was for

Slaby—as the Court might well appreciate after having heard his testimony—the

major purpose of this litigation.[17] Again, "'[t]he government cannot litigate

-------------------------------------------------

[16] In stark contrast, the *McAfee* plaintiff prevailed on only one of three
counts, under which she recovered only one category of damages out of three that
she demanded. 2013 WL 6501329, at *7.

[17] Slaby testified at trial:

Q     As you sit here today, do you want to return to the academy and
prove your ability to have a career with the FBI as a special agent?

A     Not only do I want to, but I have to. There are so many people
depending on this right now, for me to successfully to do this.

Q    And do you feel that you will be able to go back and leave all the
past aside and focus on the future?

A     Without a doubt. The mission of all of this is too great to let
something like that stand in the way of it. I will go back, and I will be
professional and calm and cool in the same way I've handled
everything, including this whole thing. It will just be that was
yesterday. Now is now, and tomorrow is tomorrow. It's that's [sic]

tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'" *City of Riverside*, 477 U.S. at 580 n.11.

This step is also where the Court may again rely on the *Johnson* factors,[18] and even the same factors it considered in setting the lodestar, but not in exactly the same way:  "'[T]o the extent that any of [the *Johnson* factors] has already been incorporated into the lodestar analysis, we do not consider [those factors] a second time.' We have never ruled, however, that when certain *Johnson* factors have merged into the lodestar calculation, they are not to be *otherwise* considered to adjust the lodestar amount." *McAfee*, 2013 WL 6501329, at *6 (citation omitted; emphasis added). But the most relevant *Johnson* factor ("(8) the amount in controversy and the results obtained") is the one presently under discussion, and none of the other factors (*see supra* note 2) supports an award of less than the lodestar amount that the motion requests.

---

easy. It's all behind me.

(Trial Transcript, Day 4.) Slaby's eagerness to return to training is one of the reasons he was willing to stipulate (Dkt. 325), before the final hearing on equitable relief, to delaying back pay and front pay until he graduates.

[18] "[W]e have reviewed attorney's fee awards primarily by use of the lodestar method, with 'substantial reliance' on the *Johnson* factors, 'sometimes to inform the calculation of the lodestar, sometimes to make upward or downward adjustments to it, and sometimes for both purposes.'" *McAfee*, 2013 WL 6501329, at *5.

### III.     The Costs are Reasonable and should be Awarded in Full

Slaby also seeks recovery of the costs incurred in bringing this claim as allowed by § 794a(b). "Where attorneys' fees are expressly authorized by statute ... [as in § 794a(b)] .... the statutory authorization of reasonable attorneys' fees was intended to include litigation expenses," *Wheeler v. Durham City Bd. of Ed.*, 585 F.2d 618, 623-24 (4th Cir. 1978),[19] so the recovery of costs is not limited to those enumerated under 28 U.S.C. § 1920. Further, the Rehabilitation Act at § 794a(a)(1) specifically incorporates 42 U.S.C. § 2000e-5(k), which includes expert witness fees as part of the recoverable costs, even in an action against the United States.

The total costs incurred are listed in Exhibit 6 (with selected invoices also attached; the movants are willing to provide other invoices upon request). Mr. Griffin and Ms. Butler attest that the requested costs are for items that they would normally charge to fee-paying clients and were reasonably necessary for the pursuit of this litigation. (Exh. 1 (Griffin Dec.) at ¶ 17; Exh. 2 (Butler Dec.) at ¶ 16.) The Court should award all of them.

### IV.     Postjudgment Interest

---

[19] *See also Daly v. Hill*, 790 F.2d 1071, 1082-85 & n.18 (4th Cir. 1986) ("[i]t is customary for attorneys to bill clients for duplicating expenses, attorney travel and other necessary litigation expenses in addition to a regular hourly rate").

Pursuant to 29 U.S.C. § 794a(a)(1)'s incorporation of 42 U.S.C. § 2000e-16(d)'s allowance of "interest to compensate for delay in payment," Slaby is entitled to postjudgment interest on his award of fees and costs, running from the date of the final judgment (November 22, 2013). The final judgment entitled to Slaby to recover his costs and, under the Rehabilitation Act's fee-shifting provision, "a reasonable attorney's fee [i]s part of the costs." 29 U.S.C. § 794a(b). The fact that the costs had not yet been quantified as of the date of the final judgment is irrelevant.

## V. <u>Conclusion</u>

Slaby's lawyers have fully complied with their obligations in seeking fees and costs in this case. They maintained meticulous, detailed contemporaneous records of their time and expenses. They have exercised billing judgment and deleted from this request time that was unnecessary, duplicative or unreasonable for any reason. And they have sought for themselves (and for others in their firms) billing rates that are consistent with the standard of reasonableness documented in the numerous supporting declarations and in the Mr. Reilly's matrix. The Court should award the fees, costs, and postjudgment interest as set forth below:

    a.    The defendant shall pay a lodestar-based fee of $1,451,025.75, based on the following:

**Marek, Griffin & Knaupp timekeepers:**

| | | |
|---|---|---|
| i. | John W. Griffin, Jr.: | $ 423,000.00 |
| ii. | Robert E. McKnight, Jr.: | $ 22,360.00 |
| iii. | Michael J. Neuerburg: | $ 102,312.50 |
| iv. | Michael J. Neuerburg: (paralegal time) | $ 4,458.75 |
| v. | Richard Soliz (paralegal) | $ 3,335.00 |
| | **MGK Total** | **$555,466.25** |

**Butler & Harris timekeepers:**

| | | |
|---|---|---|
| i. | Katherine L. Butler: | $ 531,800.00 |
| ii. | Margaret A. Harris: | $ 850.00 |
| iii. | Paul R. Harris: | $ 83,455.50 |
| iv. | Janice Barlow: (paralegal) | $ 20,155.00 |
| | **B&H Total** | **$636,260.50** |

**Ates Law Firm timekeeper:**

| | | |
|---|---|---|
| i. | John R. Ates: | $ 257,271.00 |

**Cashdan & Kane timekeeper:**

| | | |
|---|---|---|
| i. | David R. Cashdan: | $ 2,028,00 |
| | | **$1,451,025.75** |

     b.     The defendant shall pay costs in the total amount of $184,785.57,

attributable to the following:

| | |
|---|---|
| Marek, Griffin & Knaupp: | $146,702.93 |
| Butler & Harris: | $  38,082.64 |
| | **$184,785.57** |

     c.     The defendant shall pay postjudgment interest on **$1,635,811.32** from

November 22, 2013.

                         Respectfully submitted,

                        /s/ John R. Ates
                        John R. Ates, Esquire (VSB # 71697)
                        Ates Law Firm, P.C.
                        1800 Diagonal Road
                        Suite 600
                        Alexandria, Virginia 22314
                        (703) 647-7501 (telephone)
                        (703) 229-6430 (facsimile)
                        j.ates@ateslaw.com

                        John W. Griffin, Jr. (pro hac vice)
                        203 North Liberty Street
                        Victoria, Texas 77901
                        jwg@lawmgk.com
                        (361) 573-5500 – Telephone
                        (361) 573-5040 – Telecopier

                        Katherine L. Butler (pro hac vice)
                        1007 Heights Boulevard
                        Houston, Texas 77008
                        kathy@butlerharris.com

(713) 526-5677
Fax: (888) 370-5038

Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 10, 2014, I filed the foregoing using the CM/ECF system which will send a notice of electronic filing through the Court's electronic filing system to the following:

Kevin J. Mikolasheck
Lauren A. Wetzler
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3809 Fax: (703) 299-3983 Email: Stephen.Obermeier@usdoj.gov
Email: kevin.mikolashek@usdoj.gov
Email: lauren.wetzler@usdoj.gov
Attorneys for Defendant

/s/ John R. Ates
John R. Ates (VSB #71697)
Ates Law Firm, P.C.
1800 Diagonal Road
Suite 600
Alexandria, Virginia 22314
703-647-7501 Telephone
703-229-6430 Fax
j.ates@ateslaw.com