IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JUSTIN SLABY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:12-cv-1235 (AJT/IDD) |
| | ) | |
| ERIC HOLDER, | ) | |
| In his official capacity as | ) | |
| Attorney General of the United States, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Plaintiff is a former FBI agent who was dismissed from the New Agent Training Program

("NATP") at the FBI Training Academy at Quantico, Virginia, because of his disability arising

from the loss of his left hand. Having prevailed at trial in this hard-fought litigation, with

judgment now in his favor, plaintiff has filed his Motion for Reasonable Fees and Costs [Doc.

No. 340], in which he seeks statutory fees and costs to which he is entitled as the "prevailing

party."[1] Plaintiff seeks a total of $1,458,375.75 in legal fees and $124,394.11 in costs and

expenses for a total of $1,582,769.86.[2] The government contends that the requested legal fees

---

[1] The Rehabilitation Act, 29 U.S.C. § 794a(b), provides that, "[i]n any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

[2] In response to the government's opposition, plaintiff revised certain of his requests as to both fees and costs. Most significantly, plaintiff withdrew his request for approximately $60,000 in costs attributable to his trial consultant, economic expert and certain of his counsel's travel expenses. The recited amounts are the plaintiff's revised, final requests.

should be reduced to $861,462.03, representing a reduction of approximately 40 percent in the requested amount, and costs and expenses reduced to $87,057.12, for a total of $948,519.50.[3]

For the reasons stated herein, the Court awards legal fees in total amount of $1,312,538.18, together with costs and expenses in the amount of $124,394.11, for a total award of $1,436,932.29.

### Procedural History

On July 13, 2012, plaintiff filed this action under the Rehabilitation Act, 29 U.S.C. 791, *et seq.*, claiming that he was unlawfully removed from the NATP because of his disability. The case was tried before a jury beginning on July 29, 2013; and on August 7, 2013, the jury returned a verdict in plaintiff's favor, finding that (1) plaintiff was a "qualified individual" within the meaning of the Rehabilitation Act; (2) plaintiff required a reasonable accommodation in order to perform the essential functions of the job and providing a reasonable accommodation would not have constituted an undue hardship for the FBI; (3) plaintiff's employment as an FBI Special Agent would not constitute a direct threat to the health or safety of himself or other individuals that cannot be eliminated or reduced by reasonable accommodation; (4) plaintiff was removed from the NATP on the basis of his disability; and (5) plaintiff sustained compensatory damages as a result of his being removed from the NATP in the amount of $75,000.

Following the jury's verdict, plaintiff requested equitable relief in addition to his compensatory damages, including reinstatement into the NATP, a monitor with respect to his resumed training, and back pay. The Court held an initial hearing on plaintiff's requests for equitable relief on August 14, 2013, during which it received evidence from the FBI, ordered

---

[3] Approximately two thirds of the reduction the government seeks in the total fee award is based on its requested reduction in total hours charged to the case, with the balance based on a reduction in the hourly rates charged by plaintiff's counsel.

additional briefing, and scheduled a supplemental evidentiary hearing for September 12, 2013.

After directing the parties to continue settlement discussions on these issues before the

Magistrate Judge, the parties submitted a Stipulation [Doc. No. 325] to the Court resolving the

equitable relief issues pertaining to back pay, front pay, plaintiff's seniority rights upon

completion of new agent training, the non-academic training requirements that would apply to

plaintiff's new agent training, and whether a monitor would be appointed by the Court with

respect to plaintiff's new agent training (plaintiff having withdrawn this request). On November

19, 2013, the Court held a hearing on the remaining issues of: (1) when plaintiff's new agent

training should resume; (2) whether this Court should issue an injunction against the FBI with

respect to its conduct during plaintiff's training, and if so, what the substance of that injunction

should be; and (3) whether this Court should retain jurisdiction pending the completion of

plaintiff's training. In its Order dated November 22, 2013 [Doc. No. 329], the Court accepted

the Stipulation of the parties, and ordered that plaintiff be reinstated as an FBI agent and that his

new agent training be resumed on or before April 1, 2014, unless on or before March 1, 2014, the

defendant notifies the Court that plaintiff will be admitted to a regularly constituted session of

the NATP on or before June 1, 2014. The Court further ordered that the plaintiff not be removed

or otherwise dismissed or discharged from the ordered new agent training without the Court's

review and approval. The Court denied plaintiff's request for an injunction but retained

jurisdiction over this action and the relief awarded until such time as plaintiff completed his new

agent training, or such earlier time as the Court may order.[4]

On January 10, 2014, plaintiff timely filed his Motion for Reasonable Fees and Costs

[Doc. No. 340]. Submitted in support of that motion were detailed time records for each of

---

[4] On February 28, 2014, the government notified the Court that it would in fact conduct a NATP in June of 2014 and that plaintiff would be a member of that class. *See* Doc. No. 347.

plaintiff's counsel, together with itemizations and supporting documentation of the claimed

expenses. *See* Doc. Nos. 340-5 through 340-07.  Also included were declarations from

plaintiff's counsel describing their professional experience, as well as declarations from lawyers

practicing in Virginia who attested to the reasonableness of the hourly rates charged by

plaintiff's counsel. *See* Doc. Nos. 340-1 through 340-4, and 340-8 through 340-10.

The government has opposed plaintiff's fee application [Doc. No. 344] based on a

number of contentions, but overall on the grounds that "[s]imply put, counsel for the plaintiff

over-litigated this case substantially." Response to plaintiff's Motion for Fees and Costs [Doc.

No. 344].  More particularly, the government contends that the plaintiff used too many lawyers

(including, without any need to do so, lawyers from Texas) who devoted too many hours at

excessive hourly rates to take too many depositions, request too many documents, and file too

many discovery motions.  In addition, the government contends that there is insufficient data to

support the requested fees, the plaintiff requests payment for certain items that are not

reimbursable as a matter of law or constitute duplicative efforts, and the fees sought are

disproportionate to the relief plaintiff succeeded in obtaining.  The Court has reviewed in detail

each of these contentions, according to the applicable considerations, as discussed below, based

on the parties' voluminous submissions and the extensive proceedings that took place in this

thoroughly contested case, including proceedings before the Magistrate Judge, the results of

those proceedings and the Magistrate Judge's assessment of the parties' conduct.

### Analysis

#### A. Attorney's Fees

The Fourth Circuit has summarized the proper procedure to be used in determining an

award of attorney's fees:

> The proper calculation of an attorney's fee award involves a three-step process. First, the court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir.2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Id.* at 243–44. Next, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* at 244. Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

*McAfee v. Boczar*, 728 F.3d 81, 88 (4th Cir. 2013)

## 1. Determination of the Lodestar Amount:

Applying the *Johnson* factors[5] in order to determine "what is reasonable in terms of hours expended times a reasonable hourly rate," the Court concludes that (1) the number of hours claimed should be reduced by 10 percent to reflect any unnecessary duplication of effort or inability of the Court to assess the nature and reasons for the time expended based on the documentation provided; and (2) the requested hourly rates are reasonable.

This case represented the first court challenge to the FBI's New Agent Training Program under the Rehabilitation Act based on plaintiff's type of disability. Unsettled legal issues were imbedded in many aspects of the case and even after the jury's verdict and the Court's award of equitable relief, certain unsettled issues remain, such as the extent to which the jury's verdict precludes the FBI from again dismissing the plaintiff from the NATP.

---

[5] Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)).

The case presented substantial obstacles to the plaintiff's succeeding in his claim. In order to succeed, the plaintiff and his counsel had to overcome the FBI's substantial arguments concerning the discretion it must be given to fashion appropriate training requirements, the need for its physically demanding training requirements and the impact plaintiff's disability has on his ability to meet those requirements and to operate effectively and safely in the field. Several challenging propositions needed to be established to the satisfaction of the jury, including that despite his disability the plaintiff was a "qualified person," his disability could be reasonably accommodated without undue hardship to the FBI, and that his employment as an FBI Special Agent would not constitute a direct threat to the health or safety of himself or other individuals that cannot be eliminated or reduced by reasonable accommodation.

The issues presented to the jury were hotly contested by the government, who assigned highly experienced and capable counsel and devoted very substantial resources to this case. While plaintiff ultimately was successful in establishing his claim, there is no doubt that plaintiff's counsel invested its time and resources under the very substantial risk that plaintiff's claim would ultimately be unsuccessful and they would be uncompensated for their time and effort. Nevertheless, the Court has considered the number of lawyers involved in the case for the plaintiff and the extent to which certain work was likely duplicated needlessly, as well as the voluntary reductions plaintiff's counsel has already made to their billed time entries.[6] For all these reasons, the Court concludes that the lodestar amount is appropriately decreased by 10 percent.

---

[6] With respect to the utilization of Texas counsel, the Court finds that plaintiff's choice of counsel was not unreasonable under the particular circumstances of this case, particularly given the unsettled, novel issue presented by the case and counsel's experience in litigating against the FBI on disability issues. *See Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 138 (4th Cir. 1994) (party's use of out-of-state counsel was not unreasonable and district court did not abuse its discretion in awarding full fees to such counsel).

As to the requested hourly rates, the Court has considered, in particular, the prevailing rates within this District, the experience, ability and reputation of counsel, the difficulty of the issues involved, the contingent nature of the fees and the outlay of resources by counsel.[7] For all these reasons, the Court finds that the requested hourly rates are reasonable and appropriate and fully supported by the declarations and other supporting documentation provided by the plaintiff.[8]

## 2. Subtraction for "hours spent on unsuccessful claims unrelated to successful ones."

Plaintiff filed a one count Complaint alleging a violation of the Rehabilitation Act. Plaintiff obtained both compensatory damages and equitable relief based on that claim and all proceedings related to that successful claim. The Court therefore finds that no reduction in hours is appropriate on this basis.[9]

## 3. Degree of Success

As in every successful, hard-fought lawsuit, there are battles lost and won. While the plaintiff did not obtain all the relief he sought, or prevail in all respects on all motions filed, he

---

[7] Plaintiff has provided the Court with declarations from his counsel attesting to their experience as litigators, as well as declarations from local attorneys experienced in civil rights litigation in the Alexandria Division of the Eastern District of Virginia with respect to what fees are standard and appropriate in this District. *See* Doc. Nos. 340-1 through 340-4, and 340-8 through 340-10. The Court has appropriately considered these in makings its findings.

[8] The Court also concludes that it is not limited to consideration of the *Grissom* table or the *Laffey* Matrix. *See Grissom v. The Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008) (using the *Grissom* table as an appropriate gauge for prevailing market rates where the fee applicant did not provide satisfactory specific evidence of the prevailing market rates, including affidavits of local attorneys).

[9] The government complains in particular about the number of plaintiff's discovery requests and motions. While plaintiff was certainly diligent in his discovery efforts, the Court cannot find that overall his discovery efforts were inappropriate or excessive given the nature of the case and the issues that arose in it, including those that led to the imposition of discovery sanctions against the government.

obtained the primary relief he sought in his Complaint: reinstatement to the New Agent Training

Program with appropriate back pay, front pay and benefits. For this reason, the Court finds

further reduction would be inappropriate. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)

("Where a plaintiff has obtained excellent results … the fee award should not be reduced simply

because the plaintiff failed to prevail on every contention raised in the lawsuit.").

### B. Costs

The parties appear to be in agreement as to all costs and expenses except the amount of

$12,341.68, which represents one-half the cost (not fees) associated with the discovery

depositions that plaintiff took in the case.[10] The government objects to these costs on the

grounds that the number of depositions was unnecessary and their length excessive. Considering

the nature of this case, as described above, the Court finds that the number and length of the

depositions undertaken by plaintiff were not unreasonable within the context of this litigation.[11]

As for the remaining costs requested by plaintiff, the Court finds that those costs were reasonably

necessary for the prosecution of the current litigation and the plaintiff has provided sufficient

---

[10] The government has objected to all travel expenses on the grounds that plaintiff unnecessarily chose out-of-state counsel. *See* Doc. No. 344. However, it agrees that if travel expenses were to be awarded, the appropriate amount, based on the *per diem* rates for the Washington, D.C. area, would be $25,500. *See id.* Plaintiff agrees to accept $25,000 for that category of expenses. *See* Doc. No. 345. The Court has concluded that plaintiff's retention of Texas-based counsel was not unreasonable under the circumstances of this case and therefore awards expenses associated with counsel's travel in the amount agreed upon by the parties. *See* also *Evergreen Sports, LLC v. SC Christmas, Inc.*, 2013 WL 6834643 at *8 (E.D. Va. Dec. 20, 2013) (finding that an award of travel expenses for out-of-state counsel was appropriate); *see also United Mktg. Solutions, Inc. v. Fowler*, 2011 WL 837112 at *2 (E.D. Va. Mar. 2, 2011) (same). Plaintiff has also withdrawn his requests for costs associated with his trial consultant (Eric Oliver) in the amount of $32,513.85 and his economic expert (John Peters) in the amount of $7,500).

[11] All of the persons deposed by the plaintiff were either listed as witnesses by the government [Doc. Nos. 76, 136] or designated by it to testify in its 30(b)(6) deposition, with the exception of Mark Crider and Charles Pierce, both of whom were on plaintiff's final witness list and testified at trial. *See* Doc. Nos. 189, 286-1.

documentation and justification in support of those costs.[12] On this basis, the Court will award a

total of $124,394.11 in costs and expenses.

**Conclusion**

Based on the above rulings, it is hereby

ORDERED that plaintiff be, and the same hereby is, awarded $1,312,538.18 in attorneys'

fees and $124,394.11 in costs, for a total award of $1,436,932.29, judgment for which be, and the

same hereby is, entered against defendant.

The Clerk is directed to enter judgment against defendant, pursuant to Fed. R. Civ. P. 58

and in accordance with this Order and to forward copies of this Order to all counsel of record.

/s/

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 24, 2014

---

[12] Those costs include filing fees, the cost of service of process, copying and transcription, video editing, preparation of trial exhibits, Westlaw research, postage and shipping, long distance telephone calls, and expert fees and associated costs.